RIKER, DANZIG, SCHERER, HYLAND & PERRETTI
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962-1981

FEDERAL BAR NO. SM 1169

Attorneys for Plaintiff
Morton International, Inc.

**FILED**

JUL 29 1996

AT 8:30
WILLIAM T. WALSH   M
CLERK

---

MORTON INTERNATIONAL, INC.,

  Plaintiff,

  vs.

A.E. STALEY MANUFACTURING COMPANY,
AIRCO INDUSTRIAL GASES (f/k/a AIRCO,
INC. and a/k/a Air Reduction Company, Inc.),
ALLIED CHEMICAL
CORPORATION, ALUMINUM COMPANY OF
AMERICA (ALCOA), AMERICAN CYANAMID
COMPANY, ARMSTRONG WORLD
INDUSTRIES, INC., ARSYNCO, INC., BAILEY
CONTROLS CO. (f/k/a Bailey Meter Company),
BECTON-DICKINSON & CO., INC., BELFORT
INSTRUMENT CO., BELMONT METALS, INC.
(f/k/a Belmont Smelting & Refining Works, Inc.),
CANADIAN GYPSUM COMPANY, LTD.,
CANRAD, INC. (c/o Canrad Precision Industries,
Inc.), CIBA-GEIGY CORPORATION,
COLUMBIA UNIVERSITY, CONOPCO, INC.
(Cheseborough Ponds U.S.A. Co. Division),
COSAN CHEMICAL CORP., CROUSE-HINDS
SEPCO CORPORATION (f/k/a Connecticut
International), CROWN ZELLERBACH CORP.
(n/k/a James River Corporation of Nevada),
CURTISS-WRIGHT, D.F. GOLDSMITH
CHEMICAL & METAL CORPORATION, DAY
& BALDWIN (f/k/a C-P Pharmaceuticals, Inc.),
DIAMOND SHAMROCK CHEMICALS
COMPANY (n/k/a Occidental Electrochemicals
Corporation), DOW-CORNING CORPORATION,
DURA ELECTRIC LAMP CO., INC.,
DURACELL, INC. (as successor to Mallory
Battery Co., Inc.), E.I. DuPONT de NEMOURS &
CO., INC., EASTERN SMELTING & REFINING
CORP., ENGLEHARD MINERALS AND
CHEMICALS CORPORATION,

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CIVIL ACTION NO.  96-3609

Hon.  (NHP)

**COMPLAINT**

ENVIRONMENTAL CONTROL SYSTEMS,       :
EXXON CORPORATION, U.S.A., FEDERAL    :
AVIATION ADMINISTRATION, GARFIELD     :
BARING CORPORATION (f/k/a Garfield    :
Smelting & Refining Co.), GENERAL ELECTRIC  :
COMPANY, GENERAL COLOR CO., INC.,     :
GENERAL SIGNAL CORPORATION,           :
GILMARTIN INSTRUMENT CO., HARTFORD    :
ELECTRIC SUPPLY COMPANY, INC.,        :
HENKEL CORPORATION, HOFFMAN-          :
LaROCHE, INC., HUDSAR, INCORPORATED,  :
INMAR ASSOCIATES, INC., INMAR REALTY, :
INC., INTERNATIONAL NICKEL, INC., J.M. :
NEY COMPANY, K.E.M. CHEMICAL          :
COMPANY, KOPPERS (n/k/a Beazer East, Inc.), :
MAGNESIUM ELEKTRON, INC., MARVIN H.   :
MAHAN, MALLINCKRODT CHEMICAL, INC.,   :
MARISOL, INC., MERCK & CO., INC.,     :
MERCURY ENTERPRISE, INC. (f/k/a Mercury :
Instrument Service), MINNESOTA MINING AND :
MANUFACTURING COMPANY, MOBIL OIL      :
CORPORATION, MT. UNION COLLEGE, M.W.  :
KELLOGG CO., NATIONAL LEAD COMPANY    :
(Goldsmith Brothers Division), NEPERA, INC., :
NEW ENGLAND LAMINATES CO., INC., NEW  :
JERSEY INSTITUTE OF TECHNOLOGY (f/k/a :
Newark College of Engineering), NEW YORK :
CITY TRANSIT AUTHORITY, NORTHEAST     :
CHEMICAL CO. (Northeast Chemical & Industrial :
Supply Co., Inc.), OCCIDENTAL CHEMICAL :
CORPORATION (as successor to Diamond  :
Shamrock Chemical Co., formerly Diamond :
Shamrock Corporation), OLIN CORPORATION :
(f/k/a Olin Mathieson Chemical Corporation), :
PEASE & CURREN, INC., PFIZER, INC., PSG :
INDUSTRIES, INC. (f/k/a Philadelphia Scientific :
Glass, Inc.), PHILLIPS & JACOBS, INC.,  :
PUBLIC SERVICE ELECTRIC & GAS (PSE&G), :
PURE LAB OF AMERICA, RANDOLPH         :
PRODUCTS COMPANY, RAY-O-VAC           :
DIVISION OF ESB, INC. (ESB, INC.),    :
REDLAND MINERALS LIMITED, RHÔNE-      :
POULENC, INC. (f/k/a Alcolac Chemical :
Company/Guard Chemical Company),      :
                                      :
                                      :
                                      :

ROYCE ASSOCIATES (f/k/a Royce Chemical),       :
RUTGERS, THE STATE UNIVERSITY,                 :
SCIENTIFIC CHEMICAL PROCESSING, INC.,          :
SCIENTIFIC CHEMICAL TREATMENT CO.,             :
INC., SCIENTIFIC, INC., SEAFORTH MINERAL       :
& ORE CO., SPARROW REALTY, INC., STATE         :
UNIVERSITY OF NEW YORK AT BUFFALO              :
(S.U.N.Y.A.B.), SYLVANIA/GTE, TENNECO,         :
INC., TRANSTECH INDUSTRIES, INC.,              :
UEHLING INSTRUMENT CO., INC., UNION            :
CARBIDE CORPORATION, UNIVERSAL OIL             :
PRODUCTS CO., UNIVERSITY OF ILLINOIS,          :
UNIVERSITY OF MINNESOTA, VAR-LAC-OID           :
CHEMICAL COMPANY, INC., W.A. BAUM              :
CO., INC., WAGNER ELECTRIC COMPANY,            :
WESTERN MICHIGAN UNIVERSITY,                   :
WESTINGHOUSE ELECTRIC CORPORATION,             :
JOHN DOE 1-100,                                :
                                               :
  Defendants                         :
                                               :
Jointly, severally, and in the alternative.    :
                                               :
                                               :
                                               :

Now comes Plaintiff Morton International, Inc. ("Morton") and states as follows for its Complaint against the Defendants herein:

## NATURE OF ACTION

1. This is a civil action for declaratory and equitable relief, monetary damages, and response costs incurred and to be incurred by Morton in response to environmental conditions at the Ventron/Velsicol Site (the "Site") and/or the Berry's Creek Area in Bergen County, New Jersey, as defined herein, under the authority of: (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §9601 et seq.; (ii) the New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq.; (iii) the Federal Declaratory Judgment Act, 28 U.S.C. §2201 et seq.; and (iv) principles of common law.

- 3 -

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 1367, 2201, and 2202, and Sections 107 and 113 of CERCLA, 42 U.S.C. §§9607 and 9613, and has pendent and ancillary jurisdiction over the claims arising under state statutory and federal and state common law.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Sections 107 and 113 of CERCLA, 42 U.S.C. §§9607 and 9613, because the release of hazardous substances that give rise to these claims occurred in this District, because the real property that is the subject of this action is located within this District, and because a substantial part of the events or omissions giving rise to these claims occurred within this District.

## PARTIES

4.      Morton is an Indiana corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 100 N. Riverside Plaza, Chicago, Illinois 60606-1596. Morton is for purposes of this action the successor in interest to Ventron Corporation, a Massachusetts corporation.

5.      Defendant A.E. Staley Manufacturing Company ("A.E. Staley") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 2200 E. ElDorado Street, Decatur, Illinois 62525.

6.      Defendant AIRCO Industrial Gases (f/k/a AIRCO, INC. a/k/a Air Reduction Company, Inc.) ("AIRCO") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 575 Mountain Avenue, New Providence, New Jersey 07974.

7.      Defendant Allied Chemical Corporation ("Allied") is a corporation authorized to do business in the State of New Jersey and has a principal place of business at 101 Columbia Road, Morristown, New Jersey 07962.

8.    Defendant Aluminum Company of America ("ALCOA") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1501 Alcoa Building, Pittsburgh, Pennsylvania 15219.

9.    Defendant American Cyanamid Company ("Cyanamid") is a Maine corporation authorized to conduct business in the State of New Jersey and has a principal place of business at One Cyanamid Plaza, Wayne, New Jersey 07470.

10.    Defendant Armstrong World Industries, Inc. ("Armstrong") is a Pennsylvania corporation authorized to conduct business in the State of New Jersey and has a principal place of business at West Liberty Street, Lancaster, Pennsylvania 17604.

11.    Defendant Arsynco, Inc. ("Arsynco") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 13th Street, Carlstadt, New Jersey 07072.

12.    Defendant Bailey Controls Co. (f/k/a Bailey Meter Company) ("Bailey") did or does conduct business in the State of New Jersey and has a principal place of business at 29801 Euclid Avenue, Wickliffe, Ohio 44092.

13.    Defendant Becton-Dickinson & Co., Inc. ("Becton-Dickinson") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at One Becton Drive, Franklin Lakes, New Jersey 07417.

14.    Defendant Belfort Instrument Co. ("Belfort") did or does conduct business in the State of New Jersey and has a principal place of business at 727 S. Wolfe Street, Baltimore, Maryland 21231-3536.

15.    Defendant Belmont Metals, Inc. (f/k/a Belmont Smelting & Refining Works, Inc.) ("Belmont") did or does conduct business in the State of New Jersey and has a principal place of business at 330 Belmont Avenue, Brooklyn, New York 11207.

16.    Defendant Canadian Gypsum Company, Ltd. ("Gypsum") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 256 Rochester, Winnipeg, Manitoba R3T 3W2.

17.    Defendant Canrad, Inc. (c/o Canrad Precision Industries, Inc.) ("Canrad") did or does conduct business in the State of New Jersey and has a principal place of business at 100 Chestnut Street, Newark, New Jersey 07105.

18.    Defendant Ciba-Geigy Corporation, successor to Toms River Chemical Corp., ("Ciba-Geigy") is a New York corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 444 Saw Mill River Road, Ardsley, New York 10502.

19.    Defendant Columbia University ("Columbia") is an educational institution in the State of New York which is authorized to conduct business in the State of New Jersey and has a principal place of business at President's Office, c/o Dr. George Rupp, University President, 116 Stanton Street, New York, New York 10002-1500.

20.    Defendant Conopco, Inc. (Cheseborough Ponds U.S.A. Co. Division) ("Cheseborough") did or does conduct business in the State of New Jersey and has a principal place of business at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

21.    Defendant Cosan Chemical Corp. ("Cosan") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 400 14th Street, Carlstadt, New Jersey 07072.

22.    Defendant Crouse-Hinds Sepco Corporation (f/k/a Connecticut International) ("Crouse") did or does conduct business in the State of New Jersey and has a principal place of business at 1200 Kennedy Road, Windsor, Connecticut 06095.

23.    Defendant Crown Zellerbach Corp. (n/k/a James River Corporation of Nevada) ("Crown") is a corporation authorized to conduct business in the State of New Jersey and has a registered agent at The Corporation Trust Co., 820 Bear Tavern Road, West Trenton, New Jersey 08628.

24.    Defendant Curtiss-Wright is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1200 Wall Street West, Lyndhurst, New Jersey 07071.

25.    Defendant D.F. Goldsmith Chemical & Metal Corporation ("Goldsmith") did or does conduct business in the State of New Jersey and has a principal place of business at 909 Pitner Avenue, Evanston, Illinois 60602.

26.    Defendant Day & Baldwin (f/k/a C-P Pharmaceuticals, Inc.)  is a corporation authorized to conduct business in the State of New Jersey and has a registered agent at U.S. Corp. Company, 15 Exchange Place, Jersey City, New Jersey 07302.

27.    Defendant Diamond Shamrock Chemicals Company (n/k/a Occidental Electrochemicals Corporation) ("Diamond") is a corporation authorized to conduct business in the State of New Jersey and has a registered agent at The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 08628.

28.    Defendant Dow-Corning Corporation ("Dow") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at P.O. Box 994, Midland, Michigan 48674.

29.    Defendant Dura Electric Lamp Co., Inc. ("Dura") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 62 E. Bigelow Street, Newark, New Jersey 07114.

30.    Defendant Duracell, Inc. (as successor to Mallory Battery Company, Inc.) ("Mallory") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Berkshire Industrial Bank, Bethel, Connecticut 06501.

31.    Defendant E.I. DuPont de Nemours & Co., Inc. ("DuPont") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

32.    Defendant Eastern Smelting & Refining Corporation ("Eastern") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 37-39 Bubier Street, Lynn, Massachusetts 01901.

33.     Defendant Englehard Minerals and Chemicals Corporation ("Englehard") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1209 Orange Street, Wilmington Delaware 19801.

34.     Defendant Environmental Control Systems ("ECS") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 40 Norwell Drive, North Branford, Connecticut 06471-1818.

35.     Defendant Exxon Corporation, U.S.A. ("Exxon") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 225 East John W. Carpenter Parkway, Irving, Texas 10537.

36.     Defendant Federal Aviation Administration ("FAA") is an agency of the United States of America which did or does conduct business in the State of New Jersey and has a principal place of business at 800 Independence Avenue, S.W., Washington, D.C.  20591.

37.     Defendant Garfield Baring Corporation (f/k/a Garfield Smelting & Refining Co.) ("Garfield") is a corporation authorized to conduct business in the State of New Jersey and has a Registered Agent at c/o Edward J. Bakes, 1305 Atlantic Avenue, Atlantic City, New Jersey 08401.

38.     Defendant General Electric Company ("G.E.") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at P.O. Box 2216, Schenectady, New York 12301.

39.     Defendant General Color Co., Inc. ("General Color") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 24 B Avenue, Newark, New Jersey 07114-2652.

40.     Defendant General Signal Corporation ("General Signal") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1 High Ridge Park, Stamford, Connecticut 06904.

41.     Defendant Gilmartin Instrument Co. ("Gilmartin") is a corporation authorized to conduct business in the State of New Jersey and has a Registered Agent at c/o Phyllis A. Gilmartin, 91 Willow Avenue, Hoboken, New Jersey 07030.

42.     Defendant Hartford Electric Supply Company, Inc. ("Hartford") did or does conduct business in the State of New Jersey and has a principal place of business at 571 New Park Avenue, West Hartford, Connecticut 06110-1347.

43.     Defendant Henkel Corporation ("Henkel") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 2200 Renaissance Boulevard, Suite 200, (Gulph Mills), King of Prussia, Pennsylvania 19406.

44.     Defendant Hoffman-LaRoche, Inc. ("Hoffman-LaRoche") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 340 Kingsland Street, Nutley, New Jersey 07110.

45.     Defendant Hudsar, Incorporated ("Hudsar") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 373 South Street, Newark, New Jersey 07015.

46.     Defendant Inmar Associates, Inc. ("Inmar Associates") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1703 East Second Street, Scotch Plains, New Jersey 07076.

47.     Defendant Inmar Realty, Inc. ("Inmar Realty") is or was a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1703 East Second Street, Scotch Plains, New Jersey 07076.  On or about December 30, 1976, Inmar Realty caused its corporate name to be changed to Inmar Associates, Inc., and caused its articles of incorporation to be amended accordingly.

48.     Defendant International Nickel, Inc. ("Nickel") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Park 80 West Plaza Two, Rochelle Park, New Jersey 07662.

49.     Defendant J.M. Ney Company ("Ney") did or does conduct business in the State of New Jersey and has a principal place of business at Ney Industrial Park, Bloomfield, Connecticut 06002.

50.     Defendant K.E.M. Chemical Company ("K.E.M.") did or does conduct business in the State of New Jersey and has a principal place of business at 545 S. Fulton Avenue, Mount Vernon, New York 10550-5099.

51.     Defendant Koppers (n/k/a Beazer East, Inc.) ("Koppers") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 436 Seventh Avenue, Pittsburgh, Pennsylvania 15219.

52.     Defendant Magnesium Elektron, Inc., successor to Melberk (a joint venture between Magnesium Elektron, Inc. and F. W. Berk & Company, Inc.) ("Magnesium"), is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 500 Point Breeze Road, Flemington, New Jersey 08822.

53.     Defendant Marvin H. Mahan ("Mahan") is a natural person who did or does conduct business in the State of New Jersey and resides at 2250 Windsor Way, Scotch Plains, New Jersey 07076.  Defendant Mahan is or was the Chairman of the Board, President, and upon information and belief, the largest shareholder of Defendant Inmar Associates, Inc. at all times relevant to this complaint.  Defendant Mahan also was President of Defendant Inmar Realty, Inc., President of Defendant Sparrow Realty, Inc., President of Defendant Scientific Chemical Treatment Co., Inc., an officer of Defendant Scientific, Inc. and a shareholder of Defendant Transtech Industries, Inc.

54.     Defendant Mallinckrodt Chemical, Inc. ("Mallinckrodt") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 16305 Swingley Ridge Drive, Chesterfield, Missouri 63017.

55.     Defendant Marisol, Inc. ("Marisol") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 125 Factory Lane, Middlesex, New Jersey 08846.

56.     Defendant Merck & Co., Inc. ("Merck") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at P.O. Box 2000, Rahway, New Jersey 07065.

57.    Defendant Mercury Enterprise, Inc. (f/k/a Mercury Instrument) did or does conduct business in the State of New Jersey and has a principal place of business at Mercury Instrument Service, 3 Alto Road, Burlington, Connecticut 06013-1905.

58.    Defendant Minnesota Mining and Manufacturing Company ("3M") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 3M Center, St. Paul, Minnesota 55144.

59.    Defendant Mobil Oil Corporation ("Mobil") is a New York corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 150 East 42nd Street, New York, New York 10017.

60.    Defendant Mt. Union College is an educational institution in the State of Ohio which did or does conduct business in the State of New Jersey and has a principal place of business at 1972 Clark Avenue, Alliance, Ohio 44601-3993.

61.    Defendant M.W. Kellogg Co. ("Kellogg") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 601 Jefferson Avenue, Houston, Texas 77002.

62.    Defendant National Lead Company (Goldsmith Brothers Division) ("National Lead") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 44 State Street, Jersey City, New Jersey 07303.

63.    Defendant Nepera, Inc., ("Nepera") is a New York corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Route 17, Harriman, New York 10926.

64.    Defendant New England Laminates Company, Inc., ("NELCO") is a Connecticut corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Elm Street, Waldon, New York 12586.

65.    Defendant New Jersey Institute of Technology (f/k/a Newark College of Engineering) ("NJIT") is an educational institution in the State of New Jersey which did or does

conduct business in the State of New Jersey and has a principal place of business at University Heights, Martin Luther King Boulevard, Newark, New Jersey 07102.

66.    Defendant New York City Transit Authority ("NYCTA") did or does conduct business in the State of New Jersey and has a principal place of business at New York Transit Authority, 370 Jay Street, Brooklyn, New York 11201.

67.    Defendant Northeast Chemical Co. (Northeast Chemical & Industrial Supply Co., Inc.) ("Northeast") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 7 Thompson Lane, Elizabeth, New Jersey 07201.

68.    Defendant Occidental Chemical Corporation, formerly known as Diamond Shamrock Chemical Co., and Diamond Shamrock Corporation ("Occidental"), is a New York corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Occidental Tower 5005, LBJ Freeway, Dallas, Texas 75244.

69.    Defendant Olin Corporation (f/k/a Olin Mathieson Chemical Corporation) ("Olin") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 120 Long Ridge Road, Stamford, Connecticut 06904.

70.    Defendant Pease & Curren, Inc. ("Pease & Curren") did or does conduct business in the State of New Jersey and has a principal place of business at 75 Pennsylvania Avenue, Warwick, Rhode Island 02888.

71.    Defendant Pfizer, Inc. ("Pfizer") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 235 East 42nd Street, New York, New York 10017.

72.    Defendant Phillips & Jacobs, Inc. ("Phillips & Jacobs") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 15 Twinbridge Drive, Pennsauken, New Jersey 08110-4201.

73.    Defendant Public Service Electric & Gas ("PSE&G") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 80 Park Plaza, Newark, New Jersey 07102.

74. Defendant PSG Industries, Inc. (f/k/a/ Philadelphia Scientific Glass, Inc.) ("PSG") did or does conduct business in the State of New Jersey and has a principal place of business at 1225 Tunnel Road, Perkasie, Pennsylvania 18944.

75. Defendant Pure Lab of America ("Pure") did or does conduct business in the State of New Jersey and has a principal place of business at 291 Washington Street, Westwood, Massachusetts 02090.

76. Defendant Randolph Products Co. ("Randolph") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Park Place East, Carlstadt, New Jersey 07072.

77. Defendant Ray-O-Vac Division of ESB, Inc. ("ESB") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 55 Versailles Court, Trenton, New Jersey 08619.

78. Defendant Redland Minerals Limited, successor to F. W. Berk & Company, Limited, is a corporation organized and incorporated under the laws of Great Britain which did or does conduct business in the State of New Jersey and has a principal place of business at Redland House, Reigate, Surrey, England (U.K.) RH2 0SJ. As set out below, F. W. Berk & Company, Limited owned and controlled F. W. Berk & Company, Inc. and Carlstadt Development and Trading Co., both of which were organized and incorporated under the laws of the State of Maryland and both of which maintained offices and were authorized to conduct business in the State of New Jersey.

79. Defendant Rhône-Poulenc, Inc. (f/k/a Alcolac Chemical Company/Guard Chemical Company) ("RPI") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 125 Black Horse Lane, Monmouth Junction, New Jersey 08852.

80. Defendant Royce Associates (f/k/a Royce Chemical) ("Royce") did or does conduct business in the State of New Jersey and has a registered agent at W.J. Donnellon, 35 Carlton Avenue, East Rutherford, New Jersey 07073.

81.     Defendant Rutgers, The State University ("Rutgers") is an educational institution in the State of New Jersey which conducts business in the State of New Jersey and has a registered agent at c/o Jean W. Sidar, Room 207 - Old Queens Rutgers, New Brunswick, New Jersey 08903.

82.     Defendant Scientific Chemical Processing, Inc. ("SCP") is a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 18 Glen Road, Rutherford, New Jersey and a place of business at 216 Paterson Plank Road, Carlstadt, New Jersey 07070.

83.     Defendant Scientific Chemical Treatment Company, Inc. ("SCTC") is or was a Delaware corporation authorized to conduct business in the State of New Jersey and has a registered office at 100 West 10th Street, Wilmington, Delaware and an office at 1703 East Second Street, Scotch Plains, New Jersey 07076.  On or about March 7, 1972, SCTC caused its corporate name to be changed to Scientific, Inc., and caused its articles of incorporation to be amended accordingly.

84.     Defendant Scientific, Inc. ("Scientific") is or was a Delaware corporation authorized to conduct business in the State of New Jersey, has a principal place of business at Meadow Road, Box 1403, Edison, New Jersey 08817, and has an office at 1703 East Second Street, Scotch Plains, New Jersey 07076.  On or about June 17, 1986, Scientific caused its corporate name to be changed to Transtech Industries, Inc. and caused its articles of incorporation to be amended accordingly.

85.     Defendant Seaforth Mineral & Ore Co. ("Seaforth") did or does conduct business in the State of New Jersey and has a principal place of business at 3690 Orange Place, Suite 495, Cleveland, Ohio 44122.

86.     Defendant Sparrow Realty, Inc. ("Sparrow") is or was a New Jersey corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1703 East Second Street, Scotch Plains, New Jersey 07076.  On or about February 28, 1969, Sparrow, Inmar Realty and other corporations entered into an agreement of merger such that

- 14 -

Inmar Realty became the name of the surviving corporation formed by that merger. Inmar Associates is the successor to Inmar Realty and Sparrow for purposes of this action.

87.     Defendant State University of New York at Buffalo (S.U.N.Y.A.B.) ("S.U.N.Y.") is an educational institution in the State of New York which did or does conduct business in the State of New Jersey and has a principal place of business at 1400 Washington Avenue, Albany, New York 12222.

88.     Defendant Sylvania/GTE did or does conduct business in the State of New Jersey and has a principal place of business at 1 Stamford Forum, Stamford, Connecticut 06901.

89.     Defendant Tenneco, Inc. ("Tenneco") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1010 Milam Street, Houston, Texas 77002.

90.     Defendant Transtech Industries, Inc. ("Transtech") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 1703 East Second Street, Scotch Plains, New Jersey 07075.

91.     Defendant Uehling Instrument Co., Inc. ("Uehling") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 473 Getty Avenue, Paterson, New Jersey 07503.

92.     Defendant Union Carbide Corporation ("Union Carbide") is a New York corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 29 Old Ridgebury Road, Danbury, Connecticut 06810.

93.     Defendant Universal Oil Products Company ("UOP") is a Delaware corporation authorized to conduct business in the State of New Jersey and has a principal place of business at Columbia Road and Park Avenue, Morristown, New Jersey 07960.

94.     Defendant University of Illinois is an educational institution in the State of Illinois which did or does conduct business in the State of New Jersey and has a principal place of business at 364 Henry Administration Building, Urbana, Illinois 61801.

95.    Defendant University of Minnesota is an educational institution in the State of Minnesota which did or does conduct business in the State of New Jersey with a principal place of business at President's Office, 100 Church Street South East, Minneapolis, Minnesota 55455.

96.    Defendant Var-Lac-Oid Chemical Company, Inc. ("Var-Lac-Oid") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 13 Foster Street, P.O. Box 181, Bergenfield, New Jersey 07621.

97.    Defendant W.A. Baum Co., Inc. ("Baum") did of does conduct business in the State of New Jersey and has a principal place of business at 620 Oak Street, Copiague, New York 11726.

98.    Defendant Wagner Electric Company ("Wagner") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at R.D. 2 - Box 280A, Pleasant Valley Road, Old Bridge, New Jersey 08857.

99.    Defendant Western Michigan University is an educational institution in the State of Michigan which did or does conduct business in the State of New Jersey and has a principal place of business at 1300 Siebert Administration Building, Kalamazoo, Michigan 49008.

100.    Defendant Westinghouse Electric Corporation ("Westinghouse") is a corporation authorized to conduct business in the State of New Jersey and has a principal place of business at 11 Stanwix Street, Pittsburgh, Pennsylvania 15222.

101.    Defendants John Doe 1-100 are as yet unidentified individuals, corporations, partnerships, associations, joint ventures, and/or other persons.

## GENERAL ALLEGATIONS

### (Site History)

102.    The "Site" refers to the following tract of real property located within the Berry's Creek Area, on which the operations of F. W. Berk & Company, Inc. and Wood Ridge Chemical Company were conducted:

> An approximately 40-acre parcel located in Bergen County, New Jersey in the Boroughs of Wood Ridge and Carlstadt on the western bank of Berry's Creek within the Hackensack Meadowlands. The approximately 40-acre tract is comprised of the following

Block/Lots: Block 229, Lot 10A, Borough of Wood Ridge (approximately 4 1/2 acres); Block 229, Lot 10B, Borough of Wood Ridge (approximately 2 1/2 acres); and Block 229, Lot 8, Borough of Wood Ridge; and Block 146, Lot 3, Borough of Carlstadt (approximately 33 acres).

103.   The "Berry's Creek Area" refers to the following region:

The Site as well as the adjacent Berry's Creek and the contiguous tidal wetlands.  The north and south boundaries, respectively, of the Berry's Creek Area are defined as the creek from its headwaters just below Teterboro Airport (Moonachie Road) down to the Hackensack River.

104.   F. W. Berk & Company, Inc. ("Berk US") and Carlstadt Development & Trading Co. ("CD&T") both were incorporated under the laws of the State of Maryland on or about April 13, 1929.

105.   From 1929 through 1943, Berk US leased the Site from CD&T and conducted mercury processing and other operations at a manufacturing facility there (the "Plant"), which operations resulted in the release of hazardous substances at, into, from, and/or around the Site and the Berry's Creek Area.

106.   In 1943, title to the Site was transferred from CD&T to Berk US, CD&T was dissolved, and Berk US continued to operate the Plant, which operations continued to result in the release of hazardous substances at, into, from, and/or around the Site and the Berry's Creek Area.

107.   During the 1950s, Magnesium and Berk US formed a joint venture and leased a portion of the Site under the name "Melberk."  Melberk conducted manufacturing operations on the Site, which operations caused the release of hazardous substances at, into, from, and/or around the Site and the Berry's Creek Area.

108.   At all relevant times, F.W. Berk & Company, Limited ("Berk UK") owned and wholly controlled the corporate actions and activities of Berk US and CD&T to such an extent that Berk US and CD&T were alter egos of Berk UK, and to the extent that the mind and will of Berk US and CD&T were not independent of, but were identical with, the mind and will of Berk UK. Berk UK's control over Berk US and CD&T and its involvement in ongoing operations of the Plant were pervasive and affected all aspects of the business and operations of Berk US and

- 17 -

CD&T, including the release of hazardous substances at and around the Site. Accordingly, Berk UK was an owner and/or operator of the Site from 1929 through 1956 and is responsible for all of the activities of Berk US and CD&T at the Site during such period of time, including any and all releases of hazardous substances at, into, from, and/or around the Site and/or the Berry's Creek Area.

109. In 1956, Berk UK sold its interest in Berk US to George W. Taylor. In 1960, Wood Ridge Chemical Corp., a wholly owned subsidiary of Velsicol Chemical Corporation ("Velsicol"), purchased the Site. Thereafter, Berk US was dissolved.

110. On or about January 3, 1966, Berk UK changed its name to Berk Limited. Thereafter, its name was changed to Steetley Chemicals Limited (March 28, 1977), Steetley Berk Limited (December 31, 1986), Steetley Minerals Limited (April 20, 1988) and, finally, to Redland Minerals Limited (November 1, 1993). For the entire period from 1891 to the present time, the registered number of the corporation as shown on the English Companies Register has remained the same: 34597. Redland Minerals Limited ("Redland") is, therefore, the successor to Berk UK.

111. From 1960 until 1968, Wood Ridge Chemical Corp. owned the Site and operated the Plant on the approximately seven acres of the Site defined as Block 229, Lots 10A and 10B, in the Boroughs of Wood-Ridge and Carlstadt. In 1967, Wood Ridge Chemical Corp. declared a land dividend to Velsicol of approximately 33 acres within the Site defined as Block 229, Lot 8 and Block 146, Lot 3. In 1986, Block 229, Lot 8 and Block 146, Lot 3 were conveyed to NWI Land Management. In 1968, Velsicol sold all of the stock of Wood Ridge Chemical Corp. to Ventron Corporation ("Ventron").

112. From 1968 until 1974, Ventron, a predecessor in interest to Morton, owned the approximately 7-acre portion of the Site identified as Block 229, Lots 10A and 10B, in the Borough of Wood Ridge, and Wood Ridge Chemical Company, a wholly owned subsidiary of Ventron, continued to operate the Plant.

113. Defendants A.E. Staley, AIRCO, ALCOA, Allied, Cyanamid, Bailey, Becton-Dickinson, Belfort, Belmont, Gypsum, Canrad, Cheseborough, Ciba-Geigy, Columbia, Cosan,

Crouse, Crown, Curtiss-Wright, Goldsmith, Day & Baldwin, Diamond, Dow, Dura, Mallory, Eastern, DuPont, Englehard, ECS, FAA, Garfield, G.E., General Color, General Signal, Gilmartin, Hartford, Hudsar, Nickel, Ney, K.E.M., Koppers, Kellogg, Magnesium, Mallinckrodt, Merck, Mercury Enterprise, Mt. Union College, National Lead, NJIT, NYCTA, Northeast, Occidental, Olin, Pease & Curren, Pfizer, Phillips & Jacobs, PSE&G, PSG, Pure, Redland, RPI, Randolph, ESB, Royce, Rutgers, Seaforth, S.U.N.Y., Sylvania/GTE, Tenneco, Uehling, Union Carbide, University of Illinois, University of Minnesota, Var-Lac-Oid, Baum, Wagner, Western Michigan University, and Westinghouse (hereinafter referred to as the "Site Defendant,") at all times relevant hereto owned and/or possessed hazardous substances and/or materials containing hazardous substances and by contract, agreement, or otherwise arranged with former owners or operators of the Plant located on the Site, for the treatment and/or disposal of such hazardous substances and/or materials containing hazardous substances at the Site from which such hazardous substances have been and/or are continuing to be released at, into, from, and/or around the Site and/or the Berry's Creek Area.

### (SCP Carlstadt Site History)

114.    The SCP Carlstadt Site consists of approximately 5.9 acres of land abutting Peach Island Creek and having a street address of 216 Paterson Plank Road, in the Borough of Carlstadt, Bergen County, New Jersey, more specifically identified as Block 124, Lots 1, 2, 3, 4 and 5 on the official tax map of the Borough of Carlstadt, New Jersey. At all times relevant hereto, the SCP Carlstadt Site was operated as a facility for the receipt, delivery, transportation, treatment, processing, resale and/or disposal of materials which include "hazardous substances" as that term is defined in Section 101(14) of CERCLA, 42 U.S.C. §9601(14).

115.    On or about November 29, 1969, Sparrow bought Lots 1 and 5 of the SCP Carlstadt Site and remained the record owner of Lots 1 and 5 through 1969.

116.    On or about February 23, 1967, Sparrow purchased and became the record owner of Lots 3 and 4 of the SCP Carlstadt Site.

- 19 -

117.    On or about February 28, 1969, Sparrow merged with and became known as Inmar Realty, at which time Inmar Realty became the record owner of Lots 1, 3, 4, and 5 of the SCP Carlstadt Site.

118.    On or about December 30, 1976, Inmar Associates became the record owner of Lots 1, 3, 4, and 5 of the SCP Carlstadt Site when Inmar Realty changed its name to Inmar Associates, Inc.

119.    On or about September 20, 1977, Inmar Associates purchased and became the record owner of Lot 2 of the SCP Carlstadt Site.

120.    From 1977 continuing through the present, Inmar Associates is and was the owner of Lots 1 through 5, inclusive, of the SCP Carlstadt Site.

121.    From a date not yet ascertained by Morton and continuing through 1970, SCTC and/or its successors Scientific and/or Transtech, and/or Mahan operated a facility at the SCP Carlstadt Site for the receipt, delivery, storage, treatment, processing, resale, and/or disposal of hazardous substances.

122.    From approximately 1970 continuing through 1980, and at other times not yet ascertained by Morton, Inmar Associates and/or its predecessors Inmar Realty and/or Sparrow leased the SCP Carlstadt Site or portions thereof to SCP.

123.    Beginning on or about 1970 and continuing until at least 1980, SCP operated a facility at the SCP Carlstadt Site for the receipt, delivery, storage, treatment, processing, resale, and/or disposal of hazardous substances.

124.    Defendants Cyanamid, Armstrong, Ciba-Geigy, Diamond, Occidental, Englehard, G.E., Mallory, Olin, Westinghouse, Tenneco, ALCOA, Exxon, Randolph, Allied, DuPont, Pfizer, Merck, Marisol, Mobil, 3M, NELCO, Hoffman-LaRoche, Nepera, and Union Carbide (hereinafter referred to as the "SCP Generator Defendants,") at all times relevant to this Complaint, owned and/or possessed hazardous substances and/or materials containing hazardous substances and by contract, agreement, or otherwise arranged for the treatment and/or disposal of such hazardous substances and/or materials containing hazardous substances at the SCP Carlstadt Site from which

such hazardous substances have been and/or are continuing to be released at, into, and/or around the Site and/or the Berry's Creek Area.

125.     Defendants Transtech, Inmar Associates, Inmar Realty, SCP, SCTC, Scientific, Sparrow, and Mahan (hereinafter referred to as the "SCP Owner/Operator Defendants,") are and/or were at all times relevant to this Complaint the owners and/or operators of the SCP Carlstadt Site at the time hazardous substances were disposed at the Carlstadt Site which have resulted and/or continue to result in a release and/or threatened release of hazardous substances at, into, and/or around the Site and/or the Berry's Creek Area.

126.     At all times relevant hereto, hazardous substances have been and/or are continuing to be released from the SCP Carlstadt Site at, into, and/or around the Berry's Creek Area and/or the Site.

### (Contributing Sites)

127.     At all times relevant hereto, hazardous substances have been and/or are continuing to be released at, into, and/or around the Site and/or the Berry's Creek Area from properties and/or facilities located near, adjacent to, upgradient from, and/or otherwise hydrogeologically-connected to the Site and/or the Berry's Creek Area (hereinafter referred to as the "Contributing Sites").

128.     Defendants Allied, Diamond, Occidental, Henkel, Randolph, Arsynco, Cosan, and UOP (hereinafter referred to as the "Direct Discharge Defendants") at all times relevant to this Complaint: (i) are or were the owners and/or operators of one or more Contributing Sites at which hazardous substances and/or materials containing hazardous substances have been disposed and from which such hazardous substances have been and/or are continuing to be released at, into, or around the Site and/or the Berry's Creek Area; and/or (ii) owned and/or possessed hazardous substances and/or materials containing hazardous substances and by contract, agreement, or otherwise arranged for the treatment and/or disposal of such hazardous substances and/or materials containing hazardous substances at the Contributing Sites from which such hazardous substances

have been and/or are continuing to be released at, into, and/or around the Site and/or the Berry's Creek Area.

### (Other Defendants)

129.     Defendants John Doe 1-100 are as yet unidentified individuals, corporations, partnerships, associates, joint ventures, and/or other persons who: (i) owned, operated, and/or participated in the ownership and/or operation of the Site, the SCP Carlstadt Site, and/or one or more Contributing Sites; (ii) by contract, agreement, or otherwise arranged for disposal and/or treatment, and/or arranged with a transporter for transport for disposal and/or treatment, of hazardous substances and/or materials containing hazardous substances owned and/or possessed by such persons which are or were released and/or threatened to be released at, into, from, and/or around the Site and/or Berry's Creek Area; and/or (iii) accepted any hazardous substances for transport for disposal and/or treatment at one or more facilities from which there is or was a release and/or threatened release of hazardous substances at, into, or around the Site and/or the Berry's Creek Area.

### (Response Activities)

130.     Morton has incurred and will continue to incur costs and expenses, including costs to perform a Remedial Investigation and Feasibility Study ("RI/FS") at the Site and the Berry's Creek Area in conjunction with the State of New Jersey's Department of Environmental Protection, in order to investigate and address environmental conditions, including contamination by hazardous substances, at the Site and the Berry's Creek Area.

### FIRST COUNT

### (CERCLA)

131.     Morton incorporates the allegations contained in Paragraphs 1 through 130 of its Complaint as if fully restated herein.

132.     Plaintiff and Defendants are each "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. §9601(21).

133.   The Site and Berry's Creek Area are, and were at times relevant hereto, "facilities" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. §9601(9).

134.   At all times relevant hereto and at the time of disposal and/or release and/or threatened release at the Site and/or the Berry's Creek Area of one or more "hazardous substances," as that term is defined in Section 101(14) of CERCLA, 42 U.S.C. §9601(14), Redland, the Site Defendants, the SCP Generator Defendants, the Direct Discharge Defendants, and the John Doe 1-100 Defendants owned and/or possessed hazardous substances and/or materials containing hazardous substances and by contract, agreement, or otherwise arranged for the treatment and/or disposal of such hazardous substances and/or materials containing hazardous substances at the Site and/or Berry's Creek Area, and, therefore, are liable parties under Section 107(a)(3) of CERCLA, 42 U.S.C. §9607(a)(3).

135.   At all times relevant hereto and at the time of disposal and/or release and/or threatened release at the Site and/or the Berry's Creek Area of one or more "hazardous substances," as that term is defined in Section 101(14) of CERCLA, 42 U.S.C. §9601(14), Redland, Magnesium, the SCP Owner/Operator Defendants, the Direct Discharge Defendants, and the John Doe 1-100 Defendants are and/or were at the time of disposal of hazardous substances, owners and/or operators of facilities from which there has been and/or continues to be a release and/or threatened release of hazardous substances to the Berry's Creek Area and/or Site and, therefore, are liable parties under Section 107(a)(1) and/or (2) of CERCLA, 42 U.S.C. §9607(a)(1) and/or (2).

136.   As a result of the actions of Defendants as referenced in Paragraphs 1 through 135 above, a "release" and/or "threatened release," as those terms are defined in Section 101(22) of CERCLA, 42 U.S.C. §9601(22), of hazardous substances has occurred, is continuing to occur, and at all relevant times hereto was occurring, at the Site and/or Berry's Creek Area.

137.   Morton has incurred and will continue to incur costs to investigate and/or otherwise respond to the release and/or threatened release of hazardous substances at the Site

and/or the Berry's Creek Area described above, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. §9601(25).

138.    Morton's actions taken in response to the release and/or threatened release of hazardous substances at the Site and/or the Berry's Creek Area and the costs incurred incident thereto were necessary and undertaken in a manner consistent with the National Contingency Plan, which is set forth at 40 C.F.R. Part 300.

139.    Morton has satisfied any and all conditions precedent to the undertaking of response actions, the incurrence of response costs, and to the recovery of such costs from Defendants under CERCLA.

140.    Under Section 107(a) of CERCLA, 42 U.S.C. §9607(a), each Defendant is strictly liable to Morton, jointly and severally, for all response costs, including costs and prejudgment interest, incurred and to be incurred by Morton in connection with the Site and the Berry's Creek Area.

141.    Under Section 113(f) of CERCLA, 42 U.S.C. §9613(f), Morton is entitled to contribution from Defendants for Defendants' equitable share of all liability, response costs, and damages incurred and to be incurred by Morton in connection with the Site and Berry's Creek Area.

## SECOND COUNT

### (Spill Act)

142.    Morton incorporates the allegations contained in Paragraphs 1 through 141 of its Complaint as if fully restated herein.

143.    The New Jersey Spill Compensation and Control Act (the "Spill Act") provides, in pertinent part at N.J.S.A. §58:10-23.11g(c), that:

> Any person who has discharged a hazardous substance or is in any way responsible for any hazardous substance . . . shall be strictly liable, jointly and severally, without regard to fault for all cleanup and removal costs.

144.    Each Defendant is a "person" as defined in the Spill Act at N.J.S.A. §58:10-23.11b.

- 24 -

145.   At all times relevant hereto, each Defendant discharged hazardous substances and/or is otherwise responsible for the discharge of hazardous substances at the Site and/or Berry's Creek Area.

146.   As a result of the actions of Defendants as referenced in Paragraphs 1 through 145 above, "hazardous substances," as defined in the Spill Act at N.J.S.A. §58:10-23.11b(k), have been discharged at the Site and/or Berry's Creek Area.

147.   Each Defendant is strictly liable, jointly and severally, to Morton for all clean-up and removal costs at the Site and/or the Berry's Creek Area, pursuant to N.J.S.A. §58:10-23.11g(c).

148.   N.J.S.A. §58:10-23.11f provides, in pertinent part, that:

> (2)  Whenever one or more dischargers or persons cleans up and removes the discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of cleanup and removal of that discharge of hazardous substance.

149.   Morton has satisfied any and all conditions precedent to cleaning up and removing the discharge of hazardous substances at the Site and at the Berry's Creek Area, the incurrence of costs associated with such activities, and to the recovery of such costs from Defendants under the Spill Act.

150.   Because Morton has cleaned up and removed discharges of hazardous substances and will continue in the future to cleanup and remove discharges of hazardous substances at and/or from the Site and/or the Berry's Creek Area within the meaning of the Spill Act, Defendants are liable in contribution to Morton pursuant to N.J.S.A. §58:10-23.11f.

### THIRD COUNT

### (Declaratory Judgment)

151.   Morton incorporates the allegations set forth in Paragraphs 1 through 150 of its Complaint as if fully restated herein.

152.   An actual, substantial, and justiciable controversy exists between Defendants and Morton regarding their respective rights and obligations for the response costs and/or damages that

have been and will be incurred in connection with the release and/or threatened release of hazardous substances at the Site and the Berry's Creek Area.

153.     Morton seeks a declaratory judgment against Defendants under Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), and the Federal Declaratory Judgment Act, 28 U.S.C. §§2201, 2202, holding Defendants strictly liable, jointly and severally, for all and/or Defendants' equitable share of the response costs incurred and to be incurred by Morton at the Site and the Berry's Creek Area that will be binding in any subsequent action to recover further response costs or damages.

154.     Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), and 28 U.S.C. §§2201, 2202, Morton is entitled to a declaration from this Court that Defendants are strictly liable, jointly and severally, to Morton for all and/or Defendants' equitable share of the response costs and damages incurred or to be incurred by Morton at the Site and the Berry's Creek Area.

## FOURTH COUNT

### (Contribution)

155.     Morton incorporates the allegations contained in Paragraphs 1 through 154 of its Complaint as if fully restated herein.

156.     To the extent Morton has incurred damages and response costs and will continue to incur damages and response costs in the future in connection with the Site and/or the Berry's Creek Area, Defendants are liable, jointly and severally, to Morton for contribution pursuant to Morton's right of contribution arising under federal and state common law and applicable statutes.

**WHEREFORE**, Morton hereby demands that this Court:

A.     Enter a judgment against Defendants, pursuant to Section 107 of CERCLA, 42 U.S.C. §9607, that Defendants are strictly liable, jointly and severally, to Morton for all response costs and damages that Morton has incurred and will incur in connection with the release and/or threatened release of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the

- 26 -

proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

B.    In the alternative, enter a judgment against Defendants, pursuant to Section 113(f) of CERCLA, 42 U.S.C. §9613(f), that Defendants are strictly liable to Morton for Defendants' fair, equitable, and proportionate contribution for all response costs and damages that Morton has incurred and will incur in connection with the release and/or threatened release of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

C.    Enter a declaratory judgment against Defendants, pursuant to Sections 107 and 113(g) of CERCLA, 42 U.S.C. §9607, 9613(g), that Defendants are strictly liable, jointly and severally, to Morton for all response costs and damages that Morton has incurred and will incur in connection with the release and/or threatened release of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

D.    In the alternative, enter a declaratory judgment against Defendants, pursuant to Section 113(f) and (g) of CERCLA, 42 U.S.C. §9613(f), (g), that Defendants are strictly liable to Morton for Defendants' fair, equitable, and proportionate contribution for all response costs and damages that Morton has incurred and will incur in connection with the release and/or threatened release of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

E.    Enter a judgment against Defendants, pursuant to Section 58:10-23.11g(c) of the Spill Act that Defendants are strictly liable, jointly and severally, to Morton for all costs and damages that Morton has incurred and will incur in connection with the

- 27 -

cleanup and/or removal of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

F.    Enter a judgment against Defendants, pursuant to Section 58:10-23.11f of the Spill Act that Defendants are liable to Morton for Defendants' fair, equitable, and proportionate contribution for all costs and damages that Morton has incurred and will incur in connection with the cleanup and/or removal of hazardous substances at, onto, or from the Site and the Berry's Creek Area in an amount according to the proof at trial, plus attorneys' fees (to the extent recoverable), costs, and prejudgment interest;

G.    Enter a judgment against Defendants under federal and/or state common law that Defendants are liable to Morton in contribution for Defendants' fair, equitable, and proportionate share of all liability, response costs, and damages incurred and to be incurred in connection with any environmental contamination at the Site and the Berry's Creek Area; and

H.   Enter a judgment against Defendants for Morton's costs, attorneys' fees, and interest, and all such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

7/29/96

Samuel P. Moulthrop
RIKER, DANZIG, SCHERER, HYLAND
   & PERETTI
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962-1981
(201) 538-0800

Attorneys for Plaintiff
Morton International, Inc.

OF COUNSEL:

Robert C. Mitchell
MORTON INTERNATIONAL, INC.
100 North Riverside Plaza
Chicago, IL  60606-1596
(312)807-2913

Thomas T. Terp
Robert A. Bilott
TAFT, STETTINIUS & HOLLISTER
1800 Star Bank Center
425 Walnut Street
Cincinnati, OH  45202-3957
(513) 357-9354

F:\SSDATA\TBY\PLD\2061158.1